279 F.3d 762
 UNITED STATES DEPARTMENT OF THE INTERIOR, Bureau of Reclamation, Yuma Area Office, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent.
Federal Labor Relations Authority, Petitioner,
v.
United States Department of the Interior, Bureau of Reclamation, Yuma Area Office, Respondent.
 No. 00-70862.
 No. 00-71139.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted December 6, 2001.
 Filed January 30, 2002.
 
 Frank A. Rosenfeld, United States Department of Justice, Civil Division, Washington, DC, for the petitioner-cross respondent.
 William E. Persina, Federal Labor Relations Authority, Washington, DC, for the respondent-cross petitioner.
 On Petition for Review and Cross Application for Enforcement of an Order of the Federal Labor Relations Authority.
 Before BRUNETTI, KLEINFELD and THOMAS, Circuit Judges.
 OPINION
 BRUNETTI, Circuit Judge.
 
 
 1
 Section 704 of the Civil Service Reform Act of 1978 provides that certain federal employees who negotiated over pay and pay practices "in accordance with prevailing rates and practices prior to August 19, 1972" could continue to negotiate over those matters "in accordance with prevailing rates and pay practices." Civil Service Reform Act (CSRA) of 1978, Pub.L. No. 95-454, § 704, 92 stat. 111, 1218 (1978) (set forth at 5 U.S.C. § 5343 note (2001)).
 
 
 2
 In this appeal, we consider whether Sunday premium pay[1] was the subject of negotiation prior to August 19, 1972, and, therefore, preserved for bargaining under section 704. We conclude that Sunday premium pay was not the subject of negotiation prior to August 19, 1972 and reverse the Federal Labor Relations Authority's (FLRA) decision ordering the Bureau of Reclamation of the Department of the Interior ("Bureau") to bargain in good faith over such proposal with the National Association of Government Employees, Local R14-143 ("union").
 
 BACKGROUND
 
 3
 The union sought to bargain with the Bureau's Yuma Area Office over Sunday differential pay for its members. The union member employees are federal employees classified for pay as prevailing rate employees. These employees are in trade or craft positions. They are paid an hourly wage on the basis of prevailing wages for their job series in the geographical area in which they work. See 5 U.S.C. §§ 5341-5349 (2001).
 
 
 4
 In August of 1972, Congress enacted legislation, the Government Employees-Prevailing Rate Systems Act (PRSA), Pub.L. No. 92-392, 86 Stat. 564 (1972) (codified at 5 U.S.C. §§ 5341 5349), to fix and adjust from time to time the rates of pay for prevailing rate employees throughout the federal government. Wage surveys were taken in different geographical areas to establish the "prevailing rate" of pay for different trade and craft positions. However, Congress decided to protect the pre-existing collective bargaining relationships for certain rate employees. Thus, section 9(b) of the PRSA was the mechanism established to preserve the rights of parties to maintain collective bargaining agreements in effect on the date of enactment of the act.
 
 
 5
 Section 9(b) provides that the PRSA should not be construed to: 1) "abrogate, modify, or otherwise affect" any pre-existing negotiated contract provision dealing with "wages, terms and conditions of employment, and other employment benefits"; 2) impair in any way the right of the parties to these contracts to "renew[], extend[], modif[y], or improve[]" the provisions of these contracts, or replace them with new contracts; and 3) after the date of enactment of the PRSA, to affect in any way any "agreement, arrangement, or understanding" that had been negotiated prior to the PRSA's enactment. PSRA § 9(b) (set forth at 5 U.S.C. § 5343 note). Section 9(b) thus clarified that the PRSA did not prevent the inclusion of bargaining subjects in renegotiated or replacement agreements, when the subjects originated in agreements negotiated before enactment of the PRSA.
 
 
 6
 In 1978, Congress enacted the CSRA. Title VII of the CSRA addresses labor-management relations in the federal government. Section 701 of Title VII establishes the framework for the labor relations program administered by the Bureau. The statute requires, with certain exceptions, federal agency employers to bargain in good faith with the exclusive representative of the appropriate bargaining units regarding the employees' conditions of employment. The CSRA also preserves pre-existing collective bargaining relationships involving prevailing rate employees.
 
 
 7
 Section 704 of the CSRA states that employees to whom section 9(b) applies have the right: (1) under section 704(a) to continue to negotiate on a condition of employment that was the subject of negotiation prior to the enactment of the PRSA; and (2) under section 704(b) to bargain on a proposal concerning a pay rate or practice if the proposal is consistent with current prevailing pay rates and practices. Thus, under section 704(a), terms and conditions of employment and other benefits must be negotiated if two requirements are met. First, the terms and conditions must have been the subject of negotiations prior to August 19, 1972. Second, the negotiations must have been in accordance with rates and practices prevailing prior to August 19, 1972. American Federation of Government Employees, Local 1978 v. FLRA, 960 F.2d 838, 841 (9th Cir.1992) [hereinafter AFGE]. If the terms and conditions include pay and pay practices, then to be negotiable the requirements of section 704(b) must also be met. "[U]nder section 704(b)[] a pay practice is not negotiable if nobody in the industry currently engages in the practice." Id.
 
 
 8
 In this case, the union represents a bargaining unit of prevailing rate employees at the Yuma Area Office. These employees bargain on pay and other matters pursuant to sections 704 and 9(b). The predecessor agency to the Yuma Area Office and the exclusive representative of the bargaining unit employees entered into a collective bargaining agreement in 1968. This agreement contained a provision mandating that certain specific benefits, including a Sunday differential, would be "provided or granted by the United States to eligible employees in accordance with applicable statutes, Civil Service rules and regulations, Departmental and Bureau rules and instructions, or other authority."
 
 
 9
 In 1996, the union submitted to the Bureau various bargaining proposals concerning pay matters, including the Sunday differential proposal, here at issue. The parties met to determine which proposals qualified for bargaining under section 704. At the time of the meeting the parties had in effect an agreement providing that contracts entered into by three other employers would be considered to determine prevailing pay rates and practices. The Bureau declined to bargain with the union over the Sunday differential pay proposal arguing that the subject matter of the proposal did not create a duty to bargain under section 704.
 
 
 10
 The union filed a petition with the FLRA seeking an order requiring the Bureau to bargain over the proposal. A majority of a three-member panel of the FLRA ruled in favor of the union. The majority held that (1) the matter was negotiated prior to 1972, as is required by section 704(a), because the parties did specifically discuss the matter, (2) section 704(a) does not require that the subject of the proposal be shown to have been prevailing prior to 1972, and (3) another federal facility can be used as the sole basis for finding a current prevailing practice as required by section 704(b). The Bureau appeals and the union cross-applies for enforcement.
 
 DISCUSSION
 A. Jurisdiction and Standard of Review
 
 11
 The FLRA is entitled to considerable deference when it is applying the general provisions of the Federal Service Labor-Management Relations Statute to the complexities of federal labor relations. United States Dep't of Interior, Bureau of Reclamation, Rio Grande Project v. FLRA, 908 F.2d 570, 572 (10th Cir.1990) [hereinafter Rio Grande]. However, decisions of the FLRA interpreting section 704 of the CSRA and section 9(b) of the PRSA are not entitled to any special deference because the FLRA is not charged with interpreting either of those sections. Id.
 
 
 12
 B. Sunday Differential Pay Was Not the Subject of Negotiations Prior to 1972
 
 
 13
 The Sunday differential pay proposal is outside the duty to bargain under the PRSA. Thus, in order for a duty to bargain to arise the proposal must fall within the bargaining exception set out in section 704. Because the proposal concerns pay rates and practices, the requirements of both sections 704(a) and 704(b) must be satisfied. Consequently, Sunday differential pay must have been the subject of negotiation prior to 1972 in accordance with prevailing rates and practices. AFGE, 960 F.2d at 840.
 
 
 14
 Although workers at the Yuma Area Office were paid Sunday premium pay prior to August 19, 1972, the Bureau argues that Sunday premium pay was not the subject of negotiation between the parties prior to August 19, 1972. First, the Bureau maintains that there is no evidence in the record to establish that the parties discussed or negotiated the subject of Sunday premium pay. Second, the Bureau argues that the workers received the Sunday premium pay only because the parties mistakenly believed that Sunday pay was required by statute. Therefore, the parties did not negotiate over the Sunday pay practice.
 
 
 15
 We agree. The record fails to establish that the parties negotiated over Sunday premium pay. In holding that Sunday premium pay had been negotiated, the FLRA noted that the dictionary definition of negotiation suggests that "negotiation" means the "process of reaching an agreement and not to the subject of, or result of, that process." Therefore, the FLRA concluded that the parties' discussion of where to include Sunday differential pay and the fact that Sunday differential pay was listed in the agreement was evidence that the parties engaged in the negotiation "process."
 
 
 16
 The FLRA erred in reaching its conclusion. While the term negotiation does refer to the process of negotiation, the verb negotiate includes within its definition the acts of communication and/or discussion between the parties in reaching a compromise. The term "negotiate" is defined in the dictionary as follows: "to communicate or confer with another so as to arrive at the settlement of some matter: meet with another so as to arrive through discussion at some kind of agreement or compromise about something." Webster's Third New International Dictionary, Unabridged, 1986. The only evidence that the parties "negotiated" Sunday premium pay is a letter that states that the parties discussed whether to list Sunday premium pay in the Supplementary Wage Schedule Agreement or retain it in the Supplementary Agreement No. 1. The discussion did not center on particular terms or whether to pay the Sunday premium. The parties simply discussed where to place Sunday premium pay in the agreement. This act does not rise to the level of negotiation.
 
 
 17
 In addition, Sunday premium pay was included in the contract in a separate document entitled "General Benefits." The document states that "[t]he following benefits will be provided or granted by the United States to eligible employees in accordance with applicable statutes, Civil Service rules and regulations, Departmental and Bureau rules and instructions, or other authority." The document then lists the following benefits:
 
 
 18
 a. Leave
 
 
 19
 b. Retirement Benefits
 
 
 20
 c. Injury Compensation
 
 
 21
 d. Unemployment Compensation
 
 
 22
 e. Social Security
 
 
 23
 f. Group Life Insurance
 
 
 24
 g. Group Health Insurance
 
 
 25
 h. Holiday Benefits
 
 
 26
 i. Per Diem
 
 
 27
 j. Government Employees Training Act
 
 
 28
 k. Sunday Differential
 
 
 29
 The inclusion of Sunday differential pay along with other nonnegotiable entitlement benefits for federal employees is further evidence that the parties regarded Sunday differential pay as a nonnegotiable benefit. Furthermore, the statute and its legislative history establish that the purpose of section 704(a) was to protect government rate employees who, prior to 1972, had bargained "terms and conditions of employment and other employment benefits" from losing their bargaining positions. CSRA § 704(a) (set forth at 5 U.S.C. § 5343 note). In this case, no terms or conditions of the Sunday premium pay were discussed or bargained between the parties.
 
 
 30
 The FLRA held that whether the Bureau was mistaken in 1968 as to the legal requirements of Sunday pay is irrelevant to the determination of whether negotiations occurred because parties may agree to include provisions for a variety of reasons and such reasons are difficult, if not impossible, to ascertain. The Tenth Circuit addressed this issue in Rio Grande and held "that negotiations premised on a perceived statutory entitlement to Sunday premium pay do not constitute negotiations in accordance with prevailing practices." 908 F.2d at 576.
 
 
 31
 Because we find that Sunday premium pay was not the subject of negotiation prior to August 19, 1972, and, therefore, does not meet the requirements of section 704(a), we need not address the other issues raised by the parties.
 
 
 32
 The decision of the FLRA is REVERSED AND REMANDED for further proceedings consistent with this opinion. The union's cross-application for enforcement is DENIED.
 
 
 
 Notes:
 
 
 [1]
 The union's proposal and the FLRA's decision refer to the pay benefit at issue here as a "Sunday differential." However, case law and the Bureau's brief refer to "Sunday premium pay." We use the two terms here interchangeably